IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| KHALIL JOHNSON,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>PROFESSIONAL PROBATION<br>SERVICES, INC.;<br>SONJALYN JOHNSON; and<br>CLAY COX,<br><br>　　　Defendants. | CIV. ACTION NO. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Khalil Johnson ("Plaintiff" or "K. Johnson") and, by and through the undersigned Counsel of Record, hereby files this Complaint for Damages against Defendants Professional Probation Services, Inc., Sonjalyn Johnson, and Clay Cox (*collectively*, "Defendants"), respectfully showing the Court as follows:

## I.  JURISDICTION AND VENUE

1.

K. Johnson commences the above-captioned case pursuant to (a) Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*.,

for sexual harassment and retaliation and (b) the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

This United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction over K. Johnson's Title VII claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over K. Johnson's State law claims, which arise from the same nucleus of operative facts as the Title VII claims pursuant to 28 U.S.C. § 1367.

3.

Venue is proper in the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b) because Defendants reside and maintain a place of business in this District and Division, and the unlawful conduct complained of herein occurred in this District and Division.

4.

K. Johnson satisfied all administrative prerequisites to institute this action. Specifically, K. Johnson timely filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within 180 calendar days from the day the discrimination took place (Charge No. 410-2019-06437), and K. Johnson has timely

brought this suit within ninety (90) days of receipt of the Notice of Right to Sue, dated February 7, 2020.

## II.  PARTIES

5.

K. Johnson is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring an action of this nature and type.

6.

At all relevant times, K. Johnson was an "employee" of Defendant Professional Probation Services, Inc., within the meaning of, among other laws, Title VII, 42 U.S.C. § 2000e(f).

7.

Defendant Professional Probation Services, Inc., ("Professional Probation") is a State of Georgia profit corporation, which provides professional services, including, but not limited to, courtroom intake, probation supervision, and fine collection, to judicial systems, affecting inter-State commerce and subject to the jurisdiction of the Court.

8.

Professional Probation is subject to the Court's jurisdiction with a principal place of business located at 1770 Indian Trail Road, Suite 350, Norcross, Georgia 30093.

9.

Professional Probation is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), with more than fifty (50) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

10.

Professional Probation may be served with process through Shannon Mandel, Registered Agent, 2200 Century Parkway, NE, Suite 800, Atlanta, Georgia 30345.

Defendant Sonjalyn Johnson ("S. Johnson") is, and was at all times relevant to this action, a resident of the State of Georgia and is subject to the jurisdiction of this Court.

11.

At all relevant times, S. Johnson was an Office Manager of Professional Probation and K. Johnson's direct supervisor responsible for, among other things,

supporting company operation, planning/implementing office systems, designing office policies, staffing, achieving financial objections, and undertaking the tangible employment actions such as the unlawful conduct described herein.

12.

S. Johnson may be served with process at Professional Probation's office located at 532 Forest Parkway, Suite A, Forest Park, Georgia 30297.

13.

Defendant Clay Cox ("Cox") is, and was at all times relevant to this action, a resident of the State of Georgia and is subject to the jurisdiction of this Court.

14.

At all relevant times, Cox was President and Chief Executive Officer of Professional Probation responsible for, among other things, managing Professional Probation's overall corporate operations and undertaking the tangible employment actions such as the unlawful conduct described herein.

15.

Cox may be served with process at Professional Probation's principal office located at 1770 Indian Trail Road, Suite 350, Norcross, Georgia 20093.

### III.  STATEMENT OF FACTS

16.

K. Johnson re-alleges and incorporates each and every preceding Paragraph of the above-captioned complaint as if set forth fully herein.

17.

Professional Probation is engaged in the business of providing courtroom intake, probation supervision, fine collection, and other probation services to judicial systems in multiple States, including Georgia.

18.

K. Johnson—a twenty-four (24) year old African-American male—was employed by Professional Probation as a Probation Officer from November 15, 2018, until his employment was unlawfully terminated on or about June 26, 2019.

19.

During the course of employment, K. Johnson reported directly to S. Johnson, Office Manager of Professional Probation's location in Forest Park, Georgia, who reported to Cox, Professional Probation's President and Chief Executive Officer.

20.

Approximately one (1) month after K. Johnson became a Probation Officer, S. Johnson began sexually harassing K. Johnson on a continual and regular basis.

21.

On almost a daily basis, S. Johnson subjected K. Johnson to repeated, unwelcome sexual advances and comments.  For example, S. Johnson often stated that her vagina was "wet" and had a certain smell—indicating the need for sexual intercourse.  Repeatedly, S. Johnson stated that she did not like having sex with her husband and that she preferred having sex with younger men, like K. Johnson.  Continually, S. Johnson described the "bulge" in K. Johnson's pants as "nice" and stated that she liked the way K. Johnson's butt looked in his pants.

22.

Although K. Johnson repeatedly declined S. Johnson's sexual advances, told S. Johnson that the remarks were inappropriate, and laughed off the sexual advances as a defense mechanism, S. Johnson continued the unwelcome sexual advances throughout the course of employment.

23.

When S. Johnson asked why K. Johnson was acting awkward in March 2019, K. Johnson told S. Johnson that the repeated unwelcome sexual advances made him uncomfortable and that, because S. Johnson was married and his boss, K. Johnson did not want to discuss anything not associated with their professional responsibilities and duties.

24.

Immediately after K. Johnson advised S. Johnson to limit discussion to professional matters, S. Johnson became hostile. For example, S. Johnson began complaining about K. Johnson's professional performance without reason, justification, or cause. Furthermore, S. Johnson began personal criticisms, such as stating K. Johnson "talked too loud."

25.

After months of unwelcome sexual comments and advances coupled with retaliatory mistreatment, on or about April 1, 2019, K. Johnson sent a text message to Sonnie Brown ("Brown"), Professional Probation's Director of Compliance and close friend of S. Johnson, requesting a transfer because S. Johnson was subjecting K. Johnson to sexual harassment and creating a hostile work environment. Additionally, K. Johnson sent Brown an e-mail, stating that K. Johnson was uncomfortable in the Office due to S. Johnson's repeated unwelcome sexual advances and comments. Rather than respond to K. Johnson, Brown advised S. Johnson of K. Johnson's complaint.

26.

Immediately after being advised of K. Johnson's complaint, S. Johnson sent K. Johnson a "Letter of Concern," criticizing K. Johnson's professional performance

without reason, falsely accusing K. Johnson of utilizing his cell phone at work and being too casual, and reprimanding K. Johnson for complaining to Brown about sexual harassment rather than the concerns with S. Johnson.

27.

On or about April 2, 2019, Brown informed K. Johnson that, although Brown was attempting to process a transfer, "This doesn't mean the problems will stop in the workplace. Every place will be like this. As a young adult, you need to learn how to deal with adversity. Not everybody will always get along with their boss."

28.

When K. Johnson finally had the opportunity to discuss the specifics of S. Johnson's sexual harassment and retaliation in or about May 2019, Brown simply responded, "What do you mean, turned her down?"

29.

On or about June 24, 2019, S. Johnson's husband aggressively confronted K. Johnson at Professional Probation's Office. After starring-down K. Johnson in a threatening manner, S. Johnson's husband said, "Why are you always parking your car next to my wife's car." When K. Johnson explained that he parks in the same location every day, S. Johnson's husband stated that he did not appreciate it and, "I will be around as long as my wife is around."

30.

Immediately after S. Johnson's husband left Professional Probation's Office, K. Johnson contacted the Forest Park Police Department, which sent a law enforcement officer to the Office to record K. Johnson's report.

31.

Shortly after the police report, Diana Fesseneen, Professional Probation's Director of Human Resources, asked K. Johnson if he wanted to stay with the company before directing K. Johnson to go home and "think it over."

32.

On or about June 26, 2019, Cox stated that K. Johnson's employment was being terminated because K. Johnson was "insubordinate" and a "toxic employee."

33.

Rather than addressing K. Johnson's complaints of unlawful treatment and unwelcome sexual advances, Defendants terminated K. Johnson's employment without reason, cause, or justification.

## IV.  CLAIMS FOR RELIEF

### COUNT ONE
### SEXUAL HARASSMENT
### IN VIOLATION OF TITLE VII
### (Tangible Employment Action and Hostile Work Environment)

34.

K. Johnson re-alleges and incorporates by reference each of the foregoing Paragraphs as if fully restated herein.

35.

Title VII prohibits employers from, among other things, discriminating against an employee on the basis of gender/sex, including, but not limited to, tangible employment actions and/or sexual harassment in the form of unwelcome sexual advances, requests for sexual favors, and/or other sexual conduct unreasonably interfering with performance or creating an intimidating, hostile, or offensive working environment.

36.

K. Johnson, as an African-American male, is a member of protected group withing the meaning of Title VII.

37.

From about November 15, 2018, until June 26, 2019, an employer-employee relationship existed between K. Johnson and Professional Probation, such that K. Johnson was an "employee" and Professional Probation was an "employer" within the meaning of Title VII.

38.

At all relevant times, Professional Probation acted by and through its agents and employees, including, but not limited to, S. Johnson, Brown, and Cox, each of whom acted in the course and scope of their employment with and for Professional Probation.

39.

At all relevant times, S. Johnson was Professional Probation's Office Manager responsible for, among other things, supervising K. Johnson, and Cox was Professional Probation's President and Chief Executive Officer responsible for, among other things, Professional Probation's daily operations.

40.

Defendants violated Title VII, such that a cause of action exists where discrimination on the basis of gender/sex was the causative agent of adverse actions directed at K. Johnson by Defendants.

41.

During the course of employment, Defendants unlawfully and knowingly discriminated against K. Johnson based on gender/sex and treated K. Johnson less-favorably than similarly-situated female employees in violation of Title VII.

42.

Professional Probation violated K. Johnson's rights pursuant to Title VII by, amount other things, subjecting K. Johnson to severe and ongoing sexual harassment, failing to take reasonable measures to correct or prevent the unlawful conduct, and terminating employment when K. Johnson complained about the unlawful conduct based upon sex/gender.

43.

While employed at Professional Probation, K. Johnson was forced to endure, because of gender/sex, a hostile work environment, where K. Johnson was subjected to adverse employment actions while forced to endure unwelcome sexual comments and advances, inflammatory remarks, harassment, intimidation, humiliation, as well as constant unwelcome sexual comments and advances without any legitimate basis.

44.

S. Johnson's unwelcome sexual comments and advances were severe and pervasive, materially affecting the terms and conditions of K. Johnson's employment.

45.

Defendants' actions constitute unlawful sexual harassment by creating a hostile work environment on the basis of K. Johnson's gender in violation of Title VII.

46.

When K. Johnson refused to comply with S. Johnson's constant, unwelcome sexual comments and advances, Defendants subjected K. Johnson to tangible employment actions, including, but not limited to, termination of employment.

47.

The discrimination to which K. Johnson was subjected to by Defendants was based on gender/sex in violation of Title VII and, thus, K. Johnson is entitled to all appropriate relief provided under the law.

48.

Defendants' actions constituted discrimination based on gender/sex such that Defendants' intentional actions adversely impacted K. Johnson's terms, conditions, and privileges of employment.

49.

Defendants' discriminatory conduct was accomplished through an unofficial policy, practice, and/or custom of Professional Probation.

50.

As a direct and proximate result of Defendants' intentional and unlawful conduct, which was intended to cause K. Johnson harm and/or was committed with reckless disregard for the harm cause to K. Johnson, in derogation of K. Johnson's Federally-protected rights, K. Johnson suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to reputation, and other pecuniary losses.

51.

Defendants' intentional and unlawful conduct entitles K. Johnson to compensatory damages, as well as any and all other remedies available under Title VII.

52.

Defendants' willfully and wantonly disregarded K. Johnson's rights, and the discrimination against K. Johnson was undertaken in bad faith.

53.

The effect of the conduct complained of herein has been to deprive K. Johnson of an equal employment opportunity and to otherwise adversely affect K. Johnson's status as an employee because of sex/gender.

54.

Defendants' actions with regard to Johnson demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care and, therefore, Johnson is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT TWO
## RETALIATION
## IN VIOLATION OF TITLE VII

55.

K. Johnson re-alleges and incorporates by reference each of the foregoing Paragraphs as if fully restated herein.

56.

Title VII prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercises or attempts to exercise rights under, Title VII.

57.

K. Johnson, as an African-American male, is a member of protected group within the meaning of Title VII.

58.

From about November 15, 2018, until June 26, 2019, an employer-employee relationship existed between K. Johnson and Professional Probation within the meaning of Title VII, such that a cause of action exists where retaliation on the basis of opposing and/or reporting unlawful employment practices is alleged to be the causative agent of adverse employment actins directed to K. Johnson by Defendants.

59.

At all relevant times, Professional Probation acted by and through its agents and employees, including, but not limited to, S. Johnson, Brown, and Cox, each of whom acted in the course and scope of their employment with and for Professional Probation.

60.

At all relevant times, S. Johnson was Professional Probation's Office Manager responsible for, among other things, supervising K. Johnson, and Cox was Professional Probation's President and Chief Executive Officer responsible for, among other things, Professional Probation's daily operations.

61.

Defendants unlawfully and knowingly discriminated against K. Johnson based upon gender/sex in violation of Title VII.

62.

K. Johnson repeatedly complained to Professional Probation's employees about unlawful employment practices in violation of Title VII.

63.

Immediately following K. Johnson's complaints concerning unlawful employment practices, Defendants took adverse employment actions against K. Johnson, including, but not limited to, unjustified reprimands, the "Letter of Concern," sending K. Johnson home without cause or justification, and the termination of employment in violation of Title VII.

64.

The effect of Defendants' actions has been to deprive K. Johnson of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due K. Johnson because of the exercise of K. Johnson's Federally-protected rights

65.

Defendants' adverse employment actions against K. Johnson constitute unlawful retaliation in violation of Title VII.

66.

Defendants' retaliatory actions were willful, deliberate, and intended to cause K. Johnson harm and/or were committed with reckless and wanton disregard of the harm caused to K. Johnson in derogation of K. Johnson's Federally-protected rights.

67.

Defendants' discriminatory and retaliatory actions were undertaken in bad faith.

68.

The retaliation to which K. Johnson was subjected by Defendants entitles K. Johnson to all appropriate relief afforded under the law.

69.

As a result of Defendants' intentional and unlawful conduct, K. Johnson has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

70.

Defendants' actions with respect to K. Johnson have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care and, thus, K. Johnson is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT THREE:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA

71.

K. Johnson re-alleges and incorporates by reference each of the foregoing Paragraphs as if fully restated herein.

72.

Defendants' statements, conduct, behavior towards K. Johnson were intentional and reckless, extreme and outrageous, causing K. Johnson severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

73.

At all relevant times, the Parties had a special, employer-employee relationship, where Defendants had control over K. Johnson and K. Johnson's sole source of income and/or livelihood.

74.

Defendants maliciously and repeatedly subjected K. Johnson to unfair treatment and harassment by, *inter alia*, constantly subjecting K. Johnson to unwelcome sexual advances and comments, criticizing K. Johnson's professional performance without cause, falsely accusing K. Johnson of professional misconduct, questioning K. Johnson's unwillingness to succumb to sexual harassment, threatening K. Johnson with violence, punishing K. Johnson based upon his complaints of sexual harassment, as well as terminating K. Johnson's employment without notice, cause, or justification immediately following K. Johnson's complaints about sexual harassment.

75.

Defendants' statements, conduct, and behavior towards K. Johnson demonstrate, among other things, a "retaliatory animus."

76.

Defendants knew or should have known that such conduct would result in severe emotional distress suffered by K. Johnson.

77.

As a result of Defendants' conduct, K. Johnson has and will continue to suffer severe emotional distress and other damages for which K. Johnson is entitled to recover.

**COUNT FOUR:**
**NEGLIGENT HIRING, RETENTION AND SUPERVISION**
**IN VIOLATION GEORGIA**

78.

K. Johnson re-alleges and incorporates by reference each of the foregoing Paragraphs as if fully restated herein.

79.

As a result of the actions taken by Defendants, K. Johnson suffered, among other things, discrimination based on race, retaliation, and severe emotional distress resulting from the unlawful, malicious, and tortious conduct described herein.

80.

Professional Probation owed K. Johnson a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in malicious, discriminatory, or tortious conduct.

81.

Professional Probation knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including, but not limited to, S. Johnson, Brown, and Cox, to engage in unlawful, malicious, and tortious conduct against K. Johnson.

82.

By failing to engage in any corrective or remedial action in response to K. Johnson's complaints, Professional Probation ratified, condoned, and/or adopted its employee's unlawful, malicious, and tortious conduct.

83.

In fact, despite K. Johnson's complaints about sexual harassment and retaliation, Professional Probation failed to take any remedial or corrective action.

84.

As a direct and proximate result of Professional Probation's negligent hiring, retention, and supervision of its employees, as well as the failure to take any remedial

or corrective action with respect to known unlawful actions taken by employees, K. Johnson suffered damages.

85.

Professional Probation's negligent conduct entitles K. Johnson to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

<strong><u>PRAYER FOR RELIEF</u></strong>

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1) Grant Plaintiff a trial by jury as to all triable issues of fact;

2) Grant declaratory judgement that Plaintiff's rights under, *inter alia*, Title VII and Georgia law were violated;

3) Grant an injunction prohibiting Defendants from engaging in such unlawful conduct in the future;

4) Award compensatory damages in an amount to be determined by a jury;

5) Award appropriate back and front pay, including, but not limited to, reimbursement for lost income, unpaid wages, bonuses, pension, social security, and other benefits in an amount proven at trial;

6) Award liquidated damages;

7)   Award punitive damages in an amount commensurate with the harm done and calculated to be sufficient to deter such future conduct;

8)   Award pre-judgment interest on any monetary award;

9)   Award Plaintiff's attorneys' fees, costs, and disbursements; and

10)  Award Plaintiff such further and additional relief as may be just and appropriate.

Respectfully submitted, this 4th day of May, 2020.

MOLDEN & ASSOCIATES

 /s/ Regina S. Molden
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Khalil Johnson*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KHALIL JOHNSON,<br><br>   Plaintiff,<br><br>   vs.<br><br>PROFESSIONAL PROBATION SERVICES, INC., SONJALYN JOHNSON, and CLAY COX,<br><br>   Defendants. | CIV. ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned certifies that this document has been prepared in accordance with the Court's Local Rules and filed with the Clerk using the CM/ECF system which will notify to the attorney(s) of record.

Respectfully submitted, this 4th day of May, 2020.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406